DANA A. KRAVETZ, ESQ. (SBN 179718)
dkravetz@mrllp.com
LARA A.H. SHORTZ, ESQ. (SBN 239609)
lshortz@mrllp.com
AMANDA K. MONROE, ESQ. (SBN 276063)
amonroe@mrllp.com
**MICHELMAN & ROBINSON, LLP**
10880 Wilshire Blvd., 19th Floor
Los Angeles, California 90024
Telephone: (310) 299-5500
Facsimile: (310) 299-5600

Attorneys for Defendant,
TGI FRIDAY'S, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAYDEN GRAGNANO, individually and on behalf of all other aggrieved employees,<br><br>   Plaintiff,<br><br>  vs.<br><br>TGI FRIDAYS INC., a New York corporation; and DOES 1 through 50, inclusive,<br><br>   Defendants. | Case No.:<br>Judge:<br>Dept:<br><br>**DEFENDANT TGI FRIDAY'S, INC.'S NOTICE OF REMOVAL**<br><br>[Riverside County Superior Court, Case No. CVRI2201229]<br><br>*[Filed concurrently with Civil Cover Sheet; Declaration of Amanda K. Monroe, Esq.; Declaration of Jennifer Rote; Certificate of Interested Parties; and Corporate Disclosure Statement]*<br><br><br>Complaint Filed:   March 25, 2022<br>Trial Date:   None set |

1

**DEFENDANT TGI FRIDAY'S, INC.'S NOTICE OF REMOVAL**

TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF, HAYDEN GRAGNANO, AND HER ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that Defendant TGI FRIDAY'S, INC. ("Defendant") files this Notice of Removal, pursuant to 28 U.S.C. §§ 1332(c), 1332(d)(2), 1367, 1441(a), 1446, and 1453, to effectuate the removal of the above-captioned action from the Superior Court for the County of Riverside to the United States District Court for the Central District of California. This Court has original jurisdiction under 28 U.S.C. §§ 1332(c), (d)(2)—the Class Action Fairness Act of 2005 ("CAFA"). The Court also has supplemental jurisdiction over Plaintiff's claims under the Private Attorneys General Act (the "PAGA") pursuant to 28 U.S.C. § 1367. Removal is proper for the following reasons:

## I. BACKGROUND

1. On March 25, 2022, Plaintiff filed a class action complaint, additionally setting forth a cause of action under the PAGA, in the Superior Court of California for the County of Riverside, titled "*HAYDEN GRAGNANO, individually and on behalf of all other aggrieved employees v. TGI FRIDAYS INC., a New York corporation and Does 1 through 50, inclusive*," Case No. CVRI2201229 ("Complaint").

2. On April 11, 2022, Defendant's registered agent for service of process in California received, via process server, the Summons; Complaint; and Civil Case Cover Sheet. A true and correct copy of the aforementioned documents are attached to the Declaration of Amanda K. Monroe ("Monroe Decl.") as **Exhibit A**.

3. On May 9, 2022, Defendant filed its Answer to Plaintiff's Complaint in Riverside County Superior Court. A true and correct copy of the Answer filed to Plaintiff's Complaint is attached to the Declaration of Amanda K. Monroe as **Exhibit B**.

4. Defendant has not filed or received any other pleadings or papers, other than

**DEFENDANT TGI FRIDAY'S, INC.'S NOTICE OF REMOVAL**

the pleadings described as **Exhibit A and B**, in this action prior to this Notice of Removal.

## II.    TIMELINESS OF REMOVAL

5. The time for filing a Notice of Removal does not run until a party has been formally served with the summons and complaint under the applicable state law "setting forth the claim for relief upon which such action or proceeding is based" or, if the case stated by the initial pleading is not removable, after receipt of any "other paper from which it may be first ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446; *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) (holding that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint").

6. The service of process which triggers the 30-day period to remove is governed by state law. *City of Clarksdale v. BellSouth Telecommunications, Inc.*, 428 F.3d 206, 210 (5th Cir. 2005).

7. This Notice of Removal is timely because it is filed within thirty (30) days of service of the Complaint, by personal service on Defendant's agent for service of process, on April 11, 2022. Cal. Code Civ. Proc. § 415.10; 28 U.S.C. § 1446(b). Thirty (30) days from the service of the Complaint on Defendant on April 11, 2022, is May 11, 2022. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) (holding that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint").

9. Plaintiff's Complaint asserts ten causes of action against Defendant: (1) Failure to Provide Meal; (2) Failure to Authorize and Permit Rest Periods; (3) Failure to Pay Minimum Wages; (4) Failure to Pay Overtime Wages; (5) Failure to Pay All Wages Due to Discharged and Quitting Employees (6) Failure to Maintain Required Records; (7) Failure to Furnish Accurate Itemized Wage Statements; (8) Failure to Indemnity Employees for Necessary Expenditures Incurred in Discharge of Duties; (9) Unfair and Unlawful Business Practices (Cal. Business & Professions Code §§

**DEFENDANT TGI FRIDAY'S, INC.'S NOTICE OF REMOVAL**

1 | 17200 *et seq.*) and (10) Representative Action for Penalties under the Labor Code
2 | Private Attorneys General Act. (Monroe Decl., Ex. A, Complaint, ¶¶ 13-60.)

3 |      10. The Complaint seeks to certify a class of "all current and former non-
4 | exempt employees of DEFENDANTS in the State of California at any time within
5 | the period beginning four (4) years prior to the filing of this action and ending at the
6 | time this action settles or proceeds to final judgement." (*Id.* at ¶ 5.)

7 |      11. Accordingly, for purposes of the calculations in this Notice of Removal, the
8 | Class Period (except as otherwise noted with respect to causes of action with a shorter
9 | statute of limitations period) is from **March 25, 2018** until the present and the PAGA
10 | Period is from **January 19, 2021** through the present.

11 | **III.    CLASS ACTION FAIRNESS ACT ("CAFA") REMOVAL**

12 |      12. This Court has original jurisdiction of this action under CAFA, codified in
13 | pertinent part at 28 U.S.C. Section 1332(d)(2). As set forth below, this action is
14 | properly removable, pursuant to 28 U.S.C. Section 1441(a), in that this Court has
15 | original jurisdiction over the action because the aggregate amount in controversy
16 | exceeds $5,000,000, exclusive of interest and costs, and the action is a class action in
17 | which at least one class member is a citizen of a state different from that of a
18 | defendant. 28 U.S.C. §§ 1332(d)(2) & (d)(6). Furthermore, the number of putative
19 | class members is greater than 100. 28 U.S.C. § 1332(d)(5)(B); Declaration of Jennifer
20 | Rote in Support of Defendant's Notice of Removal ("Rote Decl."), ¶ 10.

21 |      **A.    Plaintiff and Defendant Are Minimally Diverse**

22 |      13. CAFA requires only minimal diversity for the purpose of establishing
23 | federal jurisdiction; that is, at least one purported class member must be a citizen of a
24 | state different from any named defendant. 28 U.S.C. § 1332(d)(2)(A). In the instant
25 | case, Plaintiff is a citizen of a state (California) that is different from the state of
26 | citizenship of Defendant (which is a citizen of New York and Texas).

27 |      **1.  Plaintiff is a Citizen of California**

28 |      14.  For purposes of determining diversity, a person is a "citizen" of the state in

**DEFENDANT TGI FRIDAY'S, INC.'S NOTICE OF REMOVAL**

which he or she is domiciled. *Kantor v. Wellesley Galleries, Inc.*, 704 F.2d 1088, 1090 (9th Cir. 1983) ("To show state citizenship for diversity purposes under federal common law a party must … be domiciled in the state"). Residence is *prima facie* evidence of domicile. *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) ("the place of residence is prima facie the domicile"); *see also Zavala v. Deutsche Bank Trust Co. Americas*, 2013 WL 3474760, at *3 (N.D. Cal. July 10, 2013) (where a plaintiff's complaint alleges he resides in California, "in the absence of evidence to the contrary, [plaintiff] is a California citizen for diversity purposes"). Citizenship is determined by the individual's domicile at the time that the lawsuit is filed. *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) ("For purposes of diversity jurisdiction, an individual is a citizen of his or her state of domicile, which is determined at the time the lawsuit is filed") (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)).

15. Plaintiff admits and specifically alleges that he resides in the State of California. (Monroe Decl., Ex. A, Complaint, ¶ 4; "Plaintiff is a citizen and resident of the State of California.") Plaintiff was employed during the time period of January 21, 2020 through July 25, 2021 by Defendant at TGI Friday's Corona, California location. (Rote Decl., ¶ 9.) Plaintiff's intent to remain domiciled in California is further evidenced by the fact that she brought her lawsuit against Defendant in Riverside County Superior Court. Accordingly, Plaintiff is a citizen of California.

## 2. Defendant Is Not a Citizen of California

16. Defendant is and was, at the time of the filing of this action, a citizen of a state other than California within the meaning of 28 U.S.C. Section 1332(c)(1). For purposes of diversity jurisdiction, a corporation is deemed a citizen of the state "by which it has been incorporated" and of the state "where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

17. Defendant is now, and ever since this action commenced has been, incorporated under the laws of the State of New York. (Rote Decl., ¶ 6., and Ex. A

5

**DEFENDANT TGI FRIDAY'S, INC.'S NOTICE OF REMOVAL**

(Articles of Incorp.)) Thus, for purposes of diversity jurisdiction, Defendant is a citizen of New York.

18. Further, as shown below, Defendant's principal place of business is, and has been at all times since this action commenced, located in the State of Texas. (*Id.* ¶ 7, and Ex. A.) Thus, for purposes of diversity jurisdiction, Defendant is also a citizen of Texas.

19. The United States Supreme Court held that when determining a corporation's principal place of business for diversity purposes, the appropriate test is the "nerve center" test. *Hertz Corp. v. Friend*, 559 U.S. 77, 80-81, 92-93 (2010). Under the "nerve center" test, the "principal place of business" means the corporate headquarters where a corporation's high-level officers direct, control and coordinate its activities on a day-to-day basis. *Id.* ("We conclude that 'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities").

20. Under the "nerve center" test, Texas emerges as Defendant's principal place of business. Defendant's corporate headquarters are located in Dallas, Texas where Defendant's high-level officers direct, control, and coordinate Defendant's activities. (Rote Decl., ¶¶ 7-8.) Defendant's high-level corporate officers maintain offices in Texas, and many of Defendant's corporate level functions are performed in the Texas office. (*Id.*)

21. Therefore, for purposes of diversity of citizenship, Defendant is, and has been at all times since this action commenced, a citizen of the State of New York and the State of Texas. 28 U.S.C. § 1332(c)(1). Because Plaintiff is a citizen of California and Defendant is a citizen of New York and Texas, minimal diversity exists for purposes of CAFA.

22. **Doe Defendants.** Pursuant to 28 U.S.C. § 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. § 1332. *Fristoe v. Reynolds Metals Co.,* 615

**DEFENDANT TGI FRIDAY'S, INC.'S NOTICE OF REMOVAL**

F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition); *see also Soliman v. Philip Morris, Inc.*, 311 F. 3d 966, 971 (9th Cir. 2002) ("citizenship of fictitious defendants is disregarded for removal purposes and becomes relevant only if and when the plaintiff seeks leave to substitute a named defendant"). Indeed, the presence of "DOE" defendants in this case has no bearing on diversity of citizenship for removal. Thus, the existence of "DOES 1 through 100" in the Complaint does not deprive this Court of jurisdiction. *Abrego v. Dow Chemical Co.*, 443 F.3d 676, 679-80 (9th Cir. 2006) (rule applied in CAFA removal).

**B.    The Amount in Controversy Exceeds the Statutory Minimum**

23.    CAFA requires that the amount in controversy exceed $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. 28 U.S.C. § 1332(d)(6). In addition, Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)." Senate Judiciary Committee Report, S. Rep. No. 109-14, at 42 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 40. The Senate Judiciary Committee's Report on the final version of CAFA also makes clear that any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. *Id*. at 42-43 ("if a federal court is uncertain about whether 'all matters in controversy' in a purposed class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case . . . . Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provision should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

**DEFENDANT TGI FRIDAY'S, INC.'S NOTICE OF REMOVAL**

24. **Preponderance of The Evidence Standard.** Plaintiff's Complaint is silent as to the total amount in controversy and does not allege any amount in controversy for the class he purports to represent (including with respect to any claims under the PAGA). However, the failure of the Complaint to specify the total amount of damages or other monetary relief sought by Plaintiff does not deprive this Court of jurisdiction. Indeed, where a complaint does not allege a specific amount in damages, the removing defendant bears the burden of proving by a **preponderance of the evidence** that the amount in controversy exceeds the statutory minimum. In *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588 (2013), the U.S. Supreme Court held that the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard. *Accord Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 977 (9th Cir. 2013) ("the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard").

25. In 2011, Congress amended the federal removal statute to specify that, where the underlying state practice "permits recovery of damages in excess of the amount demanded . . . removal of the action is proper on the basis of an amount in controversy asserted  .  .  .  if the district court finds, by the *preponderance of the evidence*, that the amount in controversy exceeds the amount specified in section 1332(a)." Pub.L. 112–63, December 7, 2011, 125 Stat. 758, § 103(b)(3)(C) (codified at 28 U.S.C. § 1446(c)(2) (emphasis added)); *Abrego*, 443 F.3d 676, 683 (9th Cir. 2006) ("Where the complaint does not specify the amount of damages sought, the removing defendant must prove by a preponderance of the evidence that the amount in controversy requirement has been met"); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007) ("the complaint fails to allege a sufficiently specific total amount in controversy … we therefore apply the preponderance of the evidence burden of proof to the removing defendant"). The defendant must show that it is "more likely than not" that the jurisdictional threshold is met. *Sanchez v. Monumental*

**DEFENDANT TGI FRIDAY'S, INC.'S NOTICE OF REMOVAL**

*Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) ("where a plaintiff's state court complaint does not specify a particular amount of damages, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds $50,000.

26.  To satisfy this standard, the "defendants' notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 135 S.Ct. 547, 554 (2014); *see also Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) ("Because some remnants of our former antiremoval presumption seem to persist, we reaffirm three principles that apply in CAFA removal cases. First, a removing defendant's notice of removal 'need not contain evidentiary submissions' but **only plausible allegations** of the jurisdictional elements"; "An assertion that the amount in controversy exceeds the jurisdictional threshold is not defeated merely because it is equally possible that damages might be 'less than the requisite ... amount'") (emphasis added).

27.  That is because "[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc 'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).  Importantly, Plaintiffs seeking to represent a putative class cannot "bind the absent class" through statements aimed to limit their recovery in an effort to "avoid removal to federal court." *Standard Fire Ins. Co. v. Knowles,* 568 U.S. 588, 595-96 (2013).

28.  The burden of establishing the jurisdictional threshold "is not daunting, as courts recognize that under this standard, a removing defendant is not obligated to research, state, and prove the plaintiff's claims for damages." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008) (internal quotations omitted); *see also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) ("the parties need not predict the trier of fact's eventual award with one hundred percent accuracy").

**DEFENDANT TGI FRIDAY'S, INC.'S NOTICE OF REMOVAL**

29. It is well-settled that "the court must accept as true plaintiff's allegations as pled in the Complaint and assume that plaintiff will prove liability and recover the damages alleged." *Muniz v. Pilot Travel Ctrs. LLC*, 2007 WL 1302504, *3 (E.D. Cal. May 1, 2007) (denying motion for remand of a class action for claims under the California Labor Code for missed meal and rest periods, unpaid wages and overtime, inaccurate wage statements, and waiting-time penalties); *see also Campbell v. Vitran Express, Inc..,* 471 F. App'x. 646, 648 (9th Cir. 2012) (when assessing the amount in controversy a court must "assume the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint").  In other words, the focus of the inquiry must be on "what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe. *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008).

30. As explained by the Ninth Circuit, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." *Valdez v. Allstate Ins. Co*., 372 F.3d 1115, 1117 (9th Cir. 2004); *see also Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013) (holding that the ordinary preponderance of the evidence standard applies even if a complaint is artfully pled to avoid federal jurisdiction); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 702 (9th Cir. 2007) (holding that even if a plaintiff affirmatively pled damages less than the jurisdictional minimum and did not allege a sufficiently specific total amount in controversy, the removing defendant is still only required to show by a preponderance of evidence that the amount in controversy exceeds the jurisdictional threshold).

31. **The Court Must Assume A 100% Violation Rate Based on Plaintiff's Class-Wide (and PAGA) Allegations.** If a plaintiff asserts statutory violations, the court must assume that the violation rate is 100%—in other words, that every putative class member suffered a violation—*unless the plaintiff specifically alleges otherwise (*which Plaintiff has not):

**DEFENDANT TGI FRIDAY'S, INC.'S NOTICE OF REMOVAL**

1
2
3
4
5

> As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations. Plaintiff is the "master of [her] claim[s]," and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought. She did not.

6  *Muniz*, 2007 WL 1302504, at *4 (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386,
7  392 (1987); *see also Wheatley v. MasterBrand Cabinets*, 2019 WL 688209, at *5
8  (C.D. Cal. Feb. 19, 2019) ("Defendant and the Court must rely on assumptions
9  regarding the rate of the alleged violations … Plaintiff does not allege that some
10  putative class members were subject to distinct policies. The Court therefore finds the
11  assumption that uniform … policies were applied to **all** putative class members
12  reasonable") (emphasis added); *Soratorio v. Tesoro Ref. and Mktg. Co., LLC*, 2017
13  WL 1520416, at *3 (C.D. Cal. Apr. 26, 2017) ("Plaintiff's Complaint could be
14  reasonably read to allege a 100% violation rate. The Complaint notes that Defendants
15  'did not provide' Plaintiff and the other class members 'a thirty-minute meal period
16  for every five hours worked,' and that this was Defendant's 'common practice.' It
17  also alleges that Defendants had a practice of 'requiring employees to work for four
18  hours and more without a rest period' and that Defendants had a 'common practice'
19  of failing to provide required breaks."); *Arreola v. The Finish Line*, 2014 WL
20  6982571, *4 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have
21  permitted a defendant removing an action under CAFA to make assumptions when
22  calculating the amount in controversy—such as assuming a 100 percent violation
23  rate, or assuming that each member of the class will have experienced some type of
24  violation—when those assumptions are reasonable in light of the allegations in the
25  complaint."); *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D.
26  Cal. 2010), *aff'd sub nom. Coleman v. Estes Exp. Lines, Inc.*, 631 F.3d 1010 (9th Cir.
27  2011) ("[C]ourts have assumed a 100% violation rate in calculating the amount in
28  controversy when the complaint does not allege a more precise calculation").

**DEFENDANT TGI FRIDAY'S, INC.'S NOTICE OF REMOVAL**

32. Numerous other District Courts have similarly concluded that alleging a policy of noncompliance in a complaint justifies the assumption of a 100 percent violation rate. *See Franke v. Anderson Merchandisers LLC*, 2017 WL 3224656, at *2 (C.D. Cal. July 28, 2017) ("Courts in this Circuit have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice—or other similar language—and where the plaintiff offers no evidence rebutting this violation rate"); *Torrez v. Freedom Mortg., Corp.*, 2017 WL 2713400, at *3-5 (C.D. Cal. June 22, 2017) (where complaint alleged "FMC engaged in a pattern and practice of wage abuse against its hourly-paid or nonexempt employees within the state of California," the complaint "can reasonably be interpreted to imply nearly 100% violation rates"); *Franke v. Anderson Merchandisers LLC*, 2017 WL 3224656, at *2 (C.D. Cal. July 28, 2017) ("Courts in this Circuit have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice – or other similar language – and where the plaintiff offers no evidence rebutting this violation rate"); *Feao v. UFP Riverside, LLC*, 2017 WL 2836207, at *5 (C.D. Cal. June 26, 2017) ("Plaintiff's allegations contain no qualifying words such as 'often' or 'sometimes' to suggest less than uniform violation that would preclude a 100 percent violation rate."); *Soratorio, LLC*, 2017 WL 1520416, at *3 ("Plaintiff's Complaint could be reasonably read to allege a 100% violation rate. The Complaint notes that Defendants 'did not provide' Plaintiff and the other class members 'a thirty-minute meal period for every five hours worked,' and that this was Defendants' 'common practice.' It also alleges that Defendants had a practice of 'requiring employees to work for four hours and more without a rest period' and that Defendants had a 'common practice' of failing to provide required breaks."); *Ritenour v. Carrington Mortg. Servs. LLC*, 228 F. Supp. 3d. 1025, 1030 (C.D. Cal. 2017) ("Given the vague language of the Complaint and the broad definition of the class, it is reasonable for Defendants to assume a 100% violation rate – especially

**DEFENDANT TGI FRIDAY'S, INC.'S NOTICE OF REMOVAL**

since Plaintiffs offer no alternative rate to challenge Defendant's calculations."); *Jones v. Tween Brands, Inc.*, 2014 WL 1607636, at \*3 (C.D. Cal. Apr. 22, 2014) (using 100 percent violation rate for waiting-time penalties since the complaint did not limit the number or frequency of violations). Here, Plaintiff alleges just that, "Defendants illegal practices and policies, which are applied to all non-exempt employees in violation of the Labor Code, the applicable IWC Wage Order, and the Business and professions Code which prohibits unfair business practices arising from such violations." (*See, .e.g.,* Monroe Decl., Ex. A, Compl., ¶ 12b.)

33. The alleged amount in controversy in this class action, in the aggregate, exceeds $5,000,000. Plaintiff's claims under the PAGA only serve to further increase the amount well in excess of $5,000,000.  Plaintiff's Complaint seeks to certify, and seeks relief on behalf of, "all current and former non-exempt employees of DEFENDANTS in the State of California at any time within the period beginning four (4) years prior to the filing of this action and ending at the time this action settles or proceeds to final judgement" (*Id.* at ¶5) seeking: compensatory damages; restitution of all monies allegedly due to Plaintiff and the Class Members, as well as disgorgement or profits; meal and rest period compensation; liquidated damages; injunctive relief; waiting time penalties; statutory and civil penalties; interest on alleged unpaid wages; and reasonable attorneys' fees and costs, among other things. (*Id.* at Prayer for Relief.)   Given that Plaintiff's Complaint was filed on March 25, 2022, for purposes of the calculations in this Notice of Removal the "Class Period" is from **March 25, 2018** through present (except as otherwise noted below with respect to individual causes of action and Plaintiff's claims under the PAGA).

34.  Notwithstanding the foregoing and to be raised in further briefing, the settlement of *Miguel Mercado and Stephanie Saiza v. Briad Restaurant Group, L.L.C. et al.*, Superior Court of California, County of San Bernardino (Case No. CIVDS1810171), will serve to shorten the statutory period for many of Plaintiff's claims in the instant action.  The release in the *Mercado/Saiza* action spans from

**DEFENDANT TGI FRIDAY'S, INC.'S NOTICE OF REMOVAL**

April 27, 2017 through January 31, 2020, thereby truncating the applicable statutory time period to February 1, 2020 through present on almost all claims.[1]   While removal is proper under either class period, Defendant assumes Plaintiff's allegations as plead in the Complaint as true, so the standard Class Period applies. Defendant's assumption in no way limits or otherwise affects the enforceability of the *Mercado/Saiza* release or its later ability to argue a different applicable time period than that assumed for purposes of this Notice only.

35. The average hourly rate of pay for the alleged Class Members comprised of 2,633 individuals is approximately $15.50 per hour. (Rote Decl., ¶ 11.) The average rate of pay for the approximate 1,696 individuals that separated from their employment during the three-year statute of limitations period applicable to Plaintiff's waiting time penalty claim is approximately $14.53 per hour. (*Id.* ¶¶ 12-13.) The average hourly rate of pay for the alleged 2,153 aggrieved employees under the PAGA during the relevant PAGA statute of limitations period is approximately $15.22.  (*Id.* ¶ 16.)  Further, the average hourly rate of pay for the 1,309 alleged aggrieved employees that separated from Defendant during the relevant PAGA statute of limitations period is $14.84. (*Id.* ¶¶ 17-18.)

36. Among other forms of relief, Plaintiff namely seeks to recover, on behalf of himself and the alleged class, "statutory penalties to the extent permitted by law." (Monroe Decl., Ex. A, Compl., Prayer for Relief.) Plaintiff also seeks attorneys' fees and costs. (*Id.*) Plaintiff also seeks restitution and injunctive relief. (*Id.*) Plaintiff does not specifically limit his or the alleged class's prayer for relief.  (*See generally* Monroe Decl., Ex. A, Compl.)

37. As set forth below, the alleged amount in controversy implicated by the class-wide allegations exceeds $5,000,000, and Plaintiff's claims under PAGA serve

---

[1] Namely, Plaintiff's claims for at least unpaid meal period premiums, failure to permit rest breaks, wage statement violations, failure to reimburse necessary business expenses, and unfair business practices are covered by the *Mercado/Saiza* release.

**DEFENDANT TGI FRIDAY'S, INC.'S NOTICE OF REMOVAL**

Case 2:22-cv-03191    Document 1    Filed 05/10/22    Page 15 of 33    Page ID #:15

to further increase this number. All calculations supporting the amount in controversy are based on the Complaint's allegations, assuming, without any admission of the truth of the facts alleged and assuming solely for purposes of this Notice of Removal that liability is established.

38. The calculations below show that the possible amount in controversy exceeds $5,000,000, when considering non-exempt employees at Defendant's restaurant properties, such as Plaintiff.

### 1.    Failure to Provide Meal Periods

39. Plaintiff's Complaint alleges that "[d]uring the CLASS PERIOD, DEFENDANTS, had and continue to have, a policy and practice of failing to provide PLAINTIFF and CLASS MEMBERS full and timely meal periods as required…." (*Id.*at ¶ 14.) Based on this allegation, Plaintiff claims that "…CLASS MEMBERS have sustained economic damages, including but not limited to unpaid wages and lost interest, in an amount according to proof at trial, and are entitled to recover economic and statutory damages and penalties and other appropriate relief…" (*Id.* at ¶ 17.)

40. Labor Code Section 226.7(b) requires an employer to pay an employee one (1) additional hour of pay at the employee's regular rate of compensation for each workday that a complaint meal period is not provided. Labor Code § 226.7 provides a statute of limitations for recovery of meal break violations of three years. However, Plaintiff alleges violation of California Business and Professions Code § 17200, which extends the statutory period to March 25, 2018. *Aryeh v. Canon Business Solutions Inc.*, No. S184929, 2013 WL 263509 (Jan. 24, 2013).

41. In order to calculate a plausible amount in controversy for Plaintiff's claim for unpaid meal period premiums, Defendant conservatively assumes that all putative class members were denied meal breaks *once per week* given the length of the average shift during the relevant time period. (Rote Decl., ¶ 14.) In other words, the average shift length worked by the putative class members exceeds five hours per day – making each average shift meal break eligible. In extrapolating this out to the entire

15

**DEFENDANT TGI FRIDAY'S, INC.'S NOTICE OF REMOVAL**

class, Defendant takes an exceedingly conservative approach assuming only one violative meal break per week, wherein the Complaint does not otherwise limit the alleged violation rate. Under this analysis, and based on Plaintiff's allegations, this alleged unpaid meal premium exposure will attach to all putative class members (again, given the average meal-break eligible shift length and extrapolating same), resulting in an amount in controversy for Plaintiff's meal break claim of **$2,122,198.00** [2,633 individuals * 2 hours [2 violations per pay period] at average hourly rate of Putative Class (*i.e.*, $15.50 per hour) * 26 pay periods].  (Rote Decl., ¶¶ 10-14.)

### 2.  Failure to Permit Rest Breaks

42.    Plaintiff's Complaint alleges that "During the CLASS PERIOD, DEFENDANTS had, and continue to have, a policy and practice of failing to authorize and permit PLAINTIFF and CLASS MEMBERS to take rest breaks as required…PLAINTIFF and CLASS MEMBERS have regularly been, and continue to be, denied the opportunity to take full, uninterrupted, and timely rest periods as required..." (Monroe Decl., Ex. A, Compl., ¶ 19.)  Based on this allegation, Plaintiff claims that "PLAINTIFF and CLASS MEMBERS have sustained economic damages, including but not limited to unpaid wages and lost interest, in an amount according to proof at trial, and are entitled to recover economic and statutory damages and penalties…". (*Id.* at ¶ 21.)

43.  Labor Code § 226.7(b) requires an employer to pay an employee one (1) additional hour of pay at the employee's regular rate of compensation for each workday that a compliant rest period is not provided.  Labor Code § 226.7 provides a statute of limitations for recovery of rest break violations of three years.  However, Plaintiff alleges violation of California Business and Professions Code § 17200, which extends the statutory period to March 25, 2018.  *Aryeh v. Canon Business Solutions Inc.*, No. S184929, 2013 WL 263509 (Jan. 24, 2013).

44.  In order to calculate a plausible amount in controversy for rest break claim,

**DEFENDANT TGI FRIDAY'S, INC.'S NOTICE OF REMOVAL**

Defendant conservatively assumes that all putative class members were denied rest breaks once per workweek given the average shift length of 7.60. (Rote Decl., ¶ 14.) Under this conservative analysis, and based on Plaintiff's allegations, the rest break penalty exposure will attach to all putative class members, resulting in an amount in controversy for Plaintiff's rest break claim of **$2,122,198.00** [2,633 individuals * 2 hours [2 violations per pay period] at average hourly rate of the Putative Class (*i.e.*, $15.50 per hour) * 26 pay periods].

### 3.  Wage Statement Violations

45. Plaintiff's Complaint alleges that "DEFENDANTS knowingly and intentionally failed, and continue to fail, to timely provide PLAINTIFF and CLASS MEMBERS with accurate itemized wage statement sin writing, showing each employee's gross wages earned, total hours worked, all deductions made, net wages earned, and all applicable hourly rate in effect during each pay period and the corresponding number of hours worked at each hourly rate..." (Monroe Decl., Ex. A, Compl. at ¶ 40.) Based on this alleged violation, Plaintiff claims that he and other putative class members have been "damaged in an amount according to proof at trial, and seek all wages earned and due, plus interest thereon. Additionally, PLAINTIFF and CLASS MEMBERS are entitled to all available statutory penalties, including but not limited to civil penalties and an award of costs, expenses, and reasonable attorneys' fees,." (*Id.* at ¶ 42.)

46. With respect to Plaintiff's claim for wage statement violations, Labor Code § 226(e) provides a minimum of $50 for the initial violation as to each employee, and $100 for each further violation as to each employee, up to a maximum penalty of $4,000 per employee. The statute of limitations for recovery of penalties under Labor Code § 226 is one year. *Caliber Bodyworks, Inc. v. Sup. Ct*., 134 Cal. App. 4th 365, 376 (2005); Cal. Civ. Proc. Code § 340(a). Thus, the applicable time period relative to this claim only is **March 25, 2021 through present.**

47. In order to calculate the amount in controversy for Plaintiff's wage

**DEFENDANT TGI FRIDAY'S, INC.'S NOTICE OF REMOVAL**

statement claim (and based on the broad allegations of the Complaint), Defendant assumes, but does not admit, that all putative class members did not receive an accurate wage statement for all pay periods worked during the Class Period, as alleged by Plaintiff. Under this analysis, and based on Plaintiff's allegations, a wage statement penalty of $2,550 attaches to all putative class members, resulting in an amount in controversy for Plaintiff's wage statement claim of **$5,566,650** [2,183 individuals * $2,550 wage statement penalty (*i.e.*, 1 initial violation at $50 per employee + 25 subsequent violations at $100 per employee for average length of employment of 26 pay periods)].

### 4. Waiting Time Penalties: Failure to Pay All Wages Due to Discharged and Quitting Employees

48. Plaintiff's Complaint alleges that Defendant failed to timely pay wages due, in violation of California Labor Code §§ 201-203. Plaintiff specifically alleges that "During the CLASS PERIOD, DEFENDANTS have willfully failed to pay accrued wages and other compensation to PLAINTIFF and CLASS MEMBERS in accordance with California Labor Code §§ 201 and 202." (Monroe Decl., Ex. A, Compl., ¶ 36.)

49. On these grounds, Plaintiff seeks "waiting time penalties" under Labor Code section 203. (*Id.* at ¶ 37.) Pursuant to Section 203, a discharged employee is entitled to penalties of up to 30 days' pay at his or her regular pay. *See* Cal. Lab. Code § 203(a) ("If an employer willfully fails to pay … any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days").

50. Plaintiff does not seek to certify a waiting time sub-class, though the class period applicable to this claim is not the Class Period asserted by Plaintiff in the Complaint and is instead, three years, or March 25, 2019 through Present. While Defendant is entitled to take the allegations as asserted in the Complaint as true (and

**DEFENDANT TGI FRIDAY'S, INC.'S NOTICE OF REMOVAL**

apply its calculation to the entire Class Period as defined by Plaintiff), Defendant provides the below estimated amount in controversy in a good faith, conservative manner and based on the three-year statute of limitations.

51. Because Plaintiff in no way limits his claim, it is further reasonable to assume that each employee waited over 30 days for payment of any allegedly unpaid wages. *See Tajonar v. Echosphere*, LLC, 2015 WL 4064642, at *4-5 (S.D. Cal. July 2, 2015) (finding reasonable the defendant employer's assumption that each employee was entitled to the maximum thirty-day penalty); *Byrd v. Masonite Corp.*, 2016 WL 2593912, at *3 (C.D. Cal. May 5, 2016) ("[I]t is not unreasonable for [defendant] to assume that each employee would be entitled to the maximum wage penalty – thirty days – for waiting time violations").

52. Further, 1,696 of the 2,633 putative class members separated from Defendant's employment during the three-year statute of limitations period. (Rote Decl., ¶ 12.) Of the 1,696 putative class members separated from employment, it is plausible and reasonable to assume that each alleged putative class member waited over 30 days for payment of any alleged unpaid wages.

53. In addition, because Plaintiff does not allege that some (or any) putative class members worked part time, it is generally reasonable to assume that each employee worked eight-hour shifts. *See Wheatley*, 2019 WL 688209, at *6 ("it is reasonable for Defendant to assume eight-hour shifts"). That said, Defendant provides that the putative class's average hours worked per day was approximately 7.60 hours during the relevant portion of the Class Period. (Rote Decl., ¶ 14.) Thus, Defendant's conservative, "plausible" calculations of the amount in controversy for Plaintiff's claim for waiting time penalties assumes a 7.60-hour shift. (*Id.*)

54. Although Defendant disputes liability, a conservative, reasonable estimate of the amount in controversy for waiting time penalties for all putative members employed during the statute of limitations under the waiting time penalty claim based on a 7.60-hour average hourly shift **$5,618,576.64** [$14.53 hour * 7.60 hours/day *

**DEFENDANT TGI FRIDAY'S, INC.'S NOTICE OF REMOVAL**

30 days * 1,696 non-exempt, hourly employees separated during relevant statute of limitations during the Class Period].

### 5. Failure to Pay Minimum Wages

55.  Plaintiff and the putative class next seek allegedly unpaid minimum wages pursuant to California Labor Code §§ 1194, 1194.2, and 1197. Plaintiff's Complaint alleges that Defendant failed to pay minimum wages as follows "During the CLASS PERIOD, DEFENDANTS failed; and continue to fail, to pay PLAINTIFF and CLASS MEMBERS minimum wages for all hours worked by, among other things: requiring, suffering, or permitting PLAINTIFF and CLASS MEMBERS to work off the clock; requiring, suffering, or permitting PLAINTIFF and CLASS MEMBERS to work through meal breaks without compensation; illegally and inaccurately recording time worked by PLAINTIFF and CLASS MEMBERS; and other methods to be discovered.  (Monroe Decl., Ex. A, Compl., ¶ 24.)

56.  On these grounds, Plaintiff seeks the "unpaid balance of wages owed to them by DEFENDANTS, plus interest, penalties, attorneys' fees, expenses and costs of suit." (*Id.* ¶ 25.) Plaintiff does not limit this claim in any manner, for instance, stipulating that only certain shifts are at issue. Accordingly, at this juncture each workday and/or workweek of each putative class member during the putative class period is in controversy.

57.  Further, the statute of limitations on a claim for unpaid wages is three-years, and is extended to four years given the Plaintiff's claim for Unfair Business Practices under Section 17200, *et seq.*  Thus, there are 2,633 putative class members at issue. (Rote Decl. ¶ 10.)

58.    Plaintiff provides no further detail relative to the claim for unpaid minimum wages and does not allege any precise or even estimated damages sought. Thus, conservatively assuming that Plaintiff and the putative class seek only one hour of wages for off-the-clock work per workweek, at the average rate of pay during the Class Period of $15.50, Plaintiff has put the following amount at issue on the basis of

**DEFENDANT TGI FRIDAY'S, INC.'S NOTICE OF REMOVAL**

the minimum wage claim **$2,122,198.00**  [2,633 putative class + $15.50 hourly rate * 52 average workweeks]. Notably, this does not take into account any other theories of purported liability under this claim. Instead, this conversative estimate assumes only one hour of unpaid work per employee, per workweek (for the average number of workweeks per employee).

### 6.  Unpaid Overtime Wages

59. The Complaint next seeks alleged unpaid overtime wages on behalf of Plaintiff and the putative class. Specifically, Plaintiff alleges that "DEFENDANTS failed to compensate, and continue to fail to compensate, PLAINTIFF and CLASS MEMBERS for all overtime hours worked." (Compl. ¶ 28).  Here again, Plaintiff in no way limits the claim to any subset of employees or class period. Instead, Plaintiff has broadly and vaguely drafted the Complaint to potentially encompass all putative class members and all workweeks during the relevant Class Period.

60.  California Labor Code section 510 requires that employers pay nonexempt employees one-and-one-half times their regular rate for all hours worked over eight in a day or 40 in a week. Additionally, nonexempt employees must be paid one-and-one-half times their regular rate for the first eight hours worked on the seventh day worked in a single workweek. Employers must also pay double time for all hours worked over 12 in a day, and for all hours worked in excess of eight on the seventh consecutive day of work in a single workweek. Cal. Lab. Code § 510(a). The statutory period for recovery under California Labor Code section 510 is calculated under a four-year statute of limitations. See Cal. Code Civ. Proc. § 338(a) (setting a three-year period); Cal. Bus. & Prof. Code § 17208 (the three-year statute of limitations can be extended to four years through the pleading of a companion claim under the UCL).

61.  Thus, assuming Plaintiff and the putative class seek only one hour of overtime wages per week (again, a conservative estimated given the broad allegations in the Complaint), at the average overtime rate of pay during the Class Period of

**DEFENDANT TGI FRIDAY'S, INC.'S NOTICE OF REMOVAL**

$23.25 [$15.50*1.5] Plaintiff has put at least the following amount at issue on the basis of his unpaid overtime claim **$3,219,567.00** [2,633 putative class + $23.25 hourly rate * 52 average workweeks]. Here again, this conversative estimate assumes only one hour of unpaid overtime work per employee, per workweek (for the average number of workweeks per employee). In other words, this is an overly conservative and reasonable estimate.

### 7. Failure to Maintain Required Records

62.    Plaintiff further asserts a cause of action for Defendant's purported failure to Maintain Required Records under Labor Code sections 226 and 1174. Specifically, the Complaint states as follows: "During the CLASS PERIOD, as part of DEFENDANTS' illegal payroll policies and practices to deprive PLAINTIFF and CLASS MEMBERS of all wages earned and due, DEFENDANTS knowingly and intentionally failed to maintain records as required under California Labor Code §§ 226 and 1174, and IWC Wage Order No. 5-2001, § 7, including but not limited to the following records: total daily hours worked by each employee; applicable rates of pay; all deductions; meal periods; time records showing when each employee begins and ends each work period; and accurate itemized statements. (Compl. ¶ 44.)  Again, Plaintiff has not limited the claim in any manner to any subset of employees or any specific time period. Thus, it is proper and reasonable for purposes of removal for Defendant to construe that Plaintiff's claim applies to all putative class members employed during the relevant Class Period.

63.    California Labor Code section 1174 requires employers to save all employee payroll records for at least three years. The penalty set forth in Section 1174 of the Labor Code for failure to maintain adequate payroll records is $500 per employee.  Thus, Plaintiff has put at least **$1,316,500.00** ($500 x 2,633 employees) at issue by virtue of this cause of action.  (Rote Decl. ¶ 10.)

///

///

**DEFENDANT TGI FRIDAY'S, INC.'S NOTICE OF REMOVAL**

**8. Failure to Reimburse Necessary Business Expenses and Unfair Business Practices Under Sections 17200, *et seq.***

64. Notably, because Plaintiff fails to provide any details relative to the claims for Defendant's alleged failure to reimburse necessary business expenditures and unfair business practices under Section 17200 of the California Business and Professions Code, Defendant has ascribed $0 to those claims for purposes of this Notice of Removal.

**9. Approximate Amount Placed in Controversy By Plaintiff's Complaint (Class Claims Only and Excluding PAGA)**

65. Although Defendant denies Plaintiff's allegations that he or the putative class are entitled to any relief whatsoever for the above-mentioned claims, based on the forgoing calculations, the alleged aggregate amount in controversy for the putative class for meal period, rest break, wage statement, waiting time penalties, failure to pay minimum wages, failure to pay overtime wages, and failure to maintain adequate records, exclusive of attorneys' fees (and exclusive of Plaintiff's claims for Failure to Reimburse Necessary Business Expenditures, Unfair Business Practices Under section 17200 of the California Business and Professions Code, and PAGA penalties), is approximately **$22,087,887.64** calculated as follows:

| | | |
|---|---|---|
| i. | **$2,122,198.00** | Meal Period Premiums |
| ii. | **$2,122,198.00** | Rest Break Violations |
| iii. | **$5,566,650.00** | Wage Statement Penalties |
| iv. | **$5,618,576.64** | Waiting Time Penalties |
| v. | **$2,122,198.00** | Failure to Pay Minimum Wages |
| vi. | **$3,219,567.00** | Failure to Pay Overtime Wages |
| vii. | **$1,316,500.00** | Failure to Maintain Adequate Records |

66. Again, the figures above do not account for Plaintiff's claim for unreimbursed business expenses (for which Plaintiff provides no information), unfair competition, PAGA penalties restitution, interest, or attorneys' fees and costs. In

**DEFENDANT TGI FRIDAY'S, INC.'S NOTICE OF REMOVAL**

1   other words, this is a conservative estimate of the amount Plaintiff has placed in
2   controversy.

3   ## 10.   Attorneys' Fees

4   67. Plaintiff also seeks attorneys' fees. (Monroe Decl., Ex. A, Compl., Prayer
5   for Relief.) Requests for attorneys' fees must also be taken into account in
6   ascertaining the amount in controversy. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150,
7   1156 (9th Cir. 1998) (claims for statutory attorneys' fees are to be included in amount
8   in controversy, regardless of whether award is discretionary or mandatory); *Brady v.*
9   *Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010-11 (N.D. Cal. 2002) ("Where
10  the law entitles the prevailing plaintiff to recover reasonable attorney fees, a
11  reasonable estimate of fees likely to be incurred to resolution is part of the benefit
12  permissibly sought by the plaintiff and thus contributes to the amount in
13  controversy.")

14  68. A reasonable estimate of fees likely to be recovered may be used in
15  calculating the amount in controversy. *Longmire v. HMS Host USA, Inc.*, 2012 WL
16  5928485, at *9 (S.D. Cal. Nov. 26, 2012) ("[C]ourts may take into account
17  reasonable estimates of attorneys' fees likely to be incurred when analyzing disputes
18  over the amount in controversy under CAFA.") (*citing Brady*, 243 F. Supp. 2d at
19  1010-11); *Muniz*, 2007 WL 1302504 at *4 (attorneys' fees appropriately included in
20  determining amount in controversy).

21  69.  The Ninth Circuit has held that "a court must include future attorneys' fees
22  recoverable by statute or contract when assessing whether the amount in controversy
23  requirement is met." *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794
24  (9th Cir. 2018); *see also Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15
25  (9th Cir. 2018) ("[T]he amount in controversy is not limited to damages incurred
26  prior to removal—for example, it is not limited to wages a plaintiff-employee would
27  have earned before removal (as opposed to after removal). Rather, the amount in
28  controversy is determined by the complaint operative at the time of removal and

**DEFENDANT TGI FRIDAY'S, INC.'S NOTICE OF REMOVAL**

encompasses all relief a court may grant on that complaint if the plaintiff is victorious."); *Lucas v. Michael Kors (USA), Inc.*, 2018 WL 2146403 (C.D. Cal. May 9, 2018) (holding that "unaccrued post-removal attorneys' fees can be factored into the amount in controversy" for CAFA jurisdiction).

70. Indeed, the Ninth Circuit has confirmed that "when a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy," including in the context of determining CAFA jurisdiction and as a "principle[] that appl[ies] in CAFA removal cases." *Arias*, 936 F.3d at 922.

71. In the class action context, courts have found that 25 percent of the aggregate amount in controversy is a benchmark for attorneys' fees award under the "percentage of fund" calculation and courts may depart from this benchmark when warranted. *See, e.g.*, *Wheatley*, 2019 WL 688209, at *6 (C.D. Cal. Feb. 19, 2019) (finding that an estimate of attorney's fees of 25% reasonable); *Ramos v. Schenker, Inc.*, 2018 WL 5779978, at *3 (C.D. Cal. Nov. 1, 2018) ("[T]he 25% benchmark provides a non-speculative guidepost for assessing jurisdiction."); *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 649 (9th Cir. 2012) (attorneys' fees appropriately included in determining amount in controversy under CAFA); *Powers v. Eichen*, 229 F.3d 1249, 1256-57 (9th Cir. 2000) ("We have also established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach"); *Wren v. RGIS Inventory Specialists*, 2011 U.S. Dist. LEXIS 38667 at *78-84 (N.D. Cal. Apr. 1, 2011) (finding ample support for adjusting the 25% presumptive benchmark upward and found that plaintiffs' request for attorneys' fees in the amount of 42% of the total settlement payment was appropriate and reasonable in the case); *Cicero v. DirecTV, Inc.*, 2010 U.S. Dist. LEXIS 86920 at *16-18 (C.D. Cal. July 27, 2010) (finding attorneys' fees in the amount of 30% of the total gross settlement amount to be reasonable); *see also In re Quintas Secs. Litig.*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001) (noting that in the class action settlement

context the benchmark for setting attorneys' fees is 25 percent of the common fund). Even under the conservative benchmark of 25 percent of the relevant total amount in controversy for Plaintiff's claims (excluding Plaintiff's claims for waiting time penalties and meal and rest break premiums), attorneys' fees alone would be upward of **$3,056,228.75**  in this case calculated as follows, [$12,224,915.00 total amount in controversy (excluding Plaintiff's claims for waiting time penalties and meal and rest break premiums) * 0.25].

72. Although Defendant denies Plaintiff's allegations that he or the putative class are entitled to any relief, based on Plaintiff's allegations and prayer for relief, and a conservative estimate based on those allegations, the total amount in controversy is **$25,144,116.39**, including attorneys' fees. This total amount in controversy far exceeds the $5,000,000 threshold set forth under 28 U.S.C. § 1332(d)(2) for removal jurisdiction.

73. Accordingly, because minimum diversity of citizenship exists, the putative class size exceeds 100, and the amount in controversy exceeds $5,000,000, this Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1332(d)(2). This action is therefore a proper one for removal to this Court pursuant to 28 U.S.C. § 1441(a).

## IV.    REMOVAL    OF    PAGA    CAUSE    OF    ACTION    BASED    ON SUPPLEMENTAL JURISDICTION UNDER 28 U.S.C. SECTION 1367

74. While the jurisdictional minimum under CAFA is met based on Plaintiff's class allegations alone, Plaintiff additionally seeks statutory penalties under the PAGA. Specifically, Plaintiff seeks to recover PAGA penalties on his own behalf and on behalf of non-parties for a myriad of alleged Labor Code violations, including as follows: "PLAINTIFF seeks to recover civil penalties, including but not limited to penalties under California Labor Code §§ 2699, 210, 226.3, 558, 1174.5, 1197.1, and IWC Wage Order No. 5-2001, § 20, from DEFENDANTS in a representative action for the violations set forth above, including but not limited to violations of California Labor Code §§ 201, 202, 203, 204, 226, 226.7, 5~ 0, 512, 1174, 1194, 1197, 1198,

**DEFENDANT TGI FRIDAY'S, INC.'S NOTICE OF REMOVAL**

and 2802." (Compl. ¶¶ 57—59.) As set forth above, the relevant time period covering Plaintiff's request for PAGA penalties is the one-year and 65-day period preceding the filing of the Complaint, or January 19, 2021. Labor Code § 340(a). During the PAGA Period, Defendant employed approximately 2,153 non-exempt hourly paid employees in the State of California. (Rote Decl. ¶ 16.) For purposes of calculating the amount in controversy on removal, these penalties should be aggregated or "stacked" for each separate type of Labor Code violation alleged. *See Schiller v. David's Bridal, Inc.,* No. 1:10-cv-616, 2010 WL 2793650, at *6 (E.D. Cal. June 2, 2011).

75. Thus, the total amount placed in controversy based on Plaintiff's claims under the PAGA is calculated, but in no way admitted, as follows:

- **$5,490,150.00      Meal Period PAGA Penalty**
  - Under PAGA, Plaintiff may seek penalties in the sum of $50 per aggrieved employee, per pay period for an initial Labor Code violation of §558 for failure to provide compliant meal periods, and $100 for each subsequent violation per aggrieved employee, per pay period. Labor Code § 558. [($50)(1 pay period)+ ($100)(25 pay periods)]* 2,153 employees

- **$5,490,150.00      Rest Break PAGA Penalty**
  - Under the same analysis as the Meal Period PAGA Penalty

- **$5,490,150.00      Wage Statement PAGA Penalty**
  - Plaintiff may additionally seek penalties for failure to provide accurate wages statements in violation of § 226 in the sum of $50 per aggrieved employee, per pay period for an initial violation, and $100 for each subsequent violation per aggrieved employee, per pay period (not to exceed $4,000 per employee). Labor Code § 226. [($50)(1 pay period)+ ($100)(25 pay periods)]* 2,153 employees.

**DEFENDANT TGI FRIDAY'S, INC.'S NOTICE OF REMOVAL**

- **$ 4,440,683.16     Waiting Time PAGA Penalty**
  - The recoverable PAGA penalty for failure to pay wages at discharge is found in Labor Code § 256. *Dunlap v. Super. Ct.*, 142 Cal. App. 4th 330, 340 (2006).  Labor Code § 256 allows for a "civil penalty in an amount not exceeding 30-day's pay as waiting time under the terms of Section 203." [($14.84 Average Hourly Rate)*(7.62 Average Hours Worked Per Shift)*(30 days)]*1,309 Separated Employees During PAGA Period.

- **$13,563,900.00     Minimum Wages PAGA Penalty**
  - Under PAGA, Plaintiff may seek penalties in the sum of $100 per aggrieved employee, per pay period for an initial Labor Code violation of § 1197.1 for failure to pay minimum wages, and $250 for each subsequent violation per aggrieved employee, per pay period. Labor Code § 2699(f)(2). [($50)(1 pay period)+ ($250)(25 pay periods)]* 2,153 employees

- **$5,490,150.00     Overtime Wages PAGA Penalty**
  - Under PAGA, Plaintiff may seek penalties in the sum of one hundred dollars ($50) per aggrieved employee, per pay period for an initial Labor Code violation of § 558 for failure to pay minimum wages, and two hundred ($100) for each subsequent violation per aggrieved employee, per pay period. Labor Code § 2699(f)(2). [($50)(1 pay period)+ ($100)(25 pay periods)]* 2,153 employees

- **$ 1,076,500.00     Failure to Maintain Adequate Records**
  - The recoverable PAGA penalty for failure to maintain records in violation of Labor Code § 1174 is set in § 1174.5, which imposes a $500 fixed civil penalty upon the violating employer. [$500*2,153 employees]

**DEFENDANT TGI FRIDAY'S, INC.'S NOTICE OF REMOVAL**

- **$41,041,683.16    Total PAGA Penalties Placed in Controversy**

By setting forth the above amounts, Defendant in no way waives its right to argue that any subsequent penalty under PAGA shall not apply and that stacking shall not be permitted.  Further, for purposes of this Notice of Removal,  Defendant assumes that only the 25% of  PAGA penalties that would allegedly be owed to Plaintiff and the aggrieved employees shall be considered for purposes of the amount placed in controversy by the Complaint, or **$10,260,420.79**, and not the 75% of penalties allegedly owed to the Labor and Workforce Development Agency. Though Courts in California have allowed for consideration of 100% of PAGA penalties for purposes of removal, Defendant takes a more conservative approach. *See Quintana v. Claire's Stores*, No. CV 13–368 PSG, 2013 WL 1736671, at *7 (N.D.Cal. Apr. 22, 2013).

76.  Importantly, even if the PAGA penalties were not aggregated and included in the CAFA amount in controversy *at all*, removal of this claim is still proper. The Court has original jurisdiction over Plaintiff's class claims under CAFA (28 U.S.C. § 1332(d))      and      the      Court      may      exercise supplemental jurisdiction over Plaintiff's PAGA claim.  To be sure,  under 28 U.S.C. § 1367(a), "district courts have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Here, Plaintiff's PAGA and class claims concern the same alleged violations and misconduct by Defendant and the  PAGA claims are therefore properly within the Court's supplemental jurisdiction  Indeed,    courts    will    exercise    supplemental jurisdiction over PAGA claims that are based on the same set of facts. *See, e.g., Thompson v. Target Corp*., No. EDCV-16-00839-JGB (MRWx), 2016 WL 4119937, at *12 (C.D. Cal. Aug. 2, 2016); *Vawter v. United Parcel Serv., Inc.,* No. CV 18-1318- RGK-E, 2018 WL 4677583, at *1 (C.D. Cal. Sept. 26, 2018) (retaining supplemental jurisdiction over PAGA claims related to class claims); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) (holding that to exercise

**DEFENDANT TGI FRIDAY'S, INC.'S NOTICE OF REMOVAL**

1    supplemental jurisdiction, "[t]he state and federal claims must derive from a common
2    nucleus of operative fact"). To belabor the point, Plaintiff's remaining claims under
3    the PAGA allege nearly identical purported wage and hour violations, all of which
4    arise out of the same employment relationship that gave rise to Plaintiff's claims
5    under CAFA—and fall properly within the Court's exercise of supplemental
6    jurisdiction.

7    **V. VENUE**

8    77. Venue lies in the United States District Court for the Central District of
9    California, Eastern Division, pursuant to 28 U.S.C. §§ 1391(a), 1441, and 84(c)(3).
10   This action originally was brought in Riverside County Superior Court of the State of
11   California, which is located within the Central District of California. 28 U.S.C. §
12   84(c)(3). Therefore, venue is proper because it is the "district and division embracing
13   the place where such action is pending." 28 U.S.C. § 1441(a).

14   78. A true and correct copy of this Notice of Removal will be promptly served
15   on Plaintiff and filed with the Clerk of the Riverside County Superior Court of the
16   State of California as required under 28 U.S.C. § 1446(d).

17   **VI. NOTICE TO STATE COURT AND TO PLAINTIFF**

18   79. Defendant will give prompt notice of the filing of this Notice of Removal
19   to Plaintiff and to the Clerk of the Superior Court of the State of California in the
20   County of Riverside The Notice of Removal is concurrently being served on all
21   parties, including counsel of record for Plaintiff.

22   ///
23   ///
24   ///
25   ///
26   ///
27   ///
28   ///

30

**DEFENDANT TGI FRIDAY'S, INC.'S NOTICE OF REMOVAL**

1

## VII. PRAYER FOR REMOVAL

2      80. WHEREFORE, Defendant prays that this civil action be removed from

3 Superior Court of the State of California for the County of Riverside to the United

4 States District Court for the Central District of California.

5

6 Dated: May 10, 2022                    **MICHELMAN & ROBINSON, LLP**

7

8                                        By:    /s/ Lara A.H. Shortz
                                                Dana A. Kravetz, Esq.
9                                               Lara A.H. Shortz, Esq.
                                                Amanda K. Monroe, Esq.
10                                              Attorneys for Defendant
                                                TGI FRIDAY'S, INC.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANT TGI FRIDAY'S, INC.'S NOTICE OF REMOVAL**

1

**PROOF OF SERVICE**
*Hayden Gragnano v. TGI Friday's, Inc.*

2

3

I am employed in the County of Los Angeles, State of California.  I am over the age of 18, and not a party to the within action.  My business address is 10880 Wilshire Boulevard, 19th Floor, Los Angeles, CA 90024.

4

5

On May 10, 2022, I served the foregoing document(s) described as: **DEFENDANT TGI FRIDAY'S, INC.'S NOTICE OF REMOVAL** on the interested parties by placing a true copy thereof in a sealed envelope(s) addressed as follows:

6

7

8

**SEE ATTACHED SERVICE LIST**

9

10

☒ **(BY ELECTRONIC MAIL)** By personally transmitting to the above-named person(s), who has previously agreed to receive documents via electronic mail, to the e-mail address as shown above, on the date and time listed below, originating from the Michelman & Robinson, LLP's electronic mail address, pursuant to the C.R.C. 2060 and Government Code § 11440.20.  A true copy of the above-described document(s) was transmitted by electronic transmission through the Michelman & Robinson, LLP's mail server, which did not report any error in sending the transmission.

11

12

13

☒ **(BY CM/ECF)** for parties that are CM/ECF participants. Service is being made electronically on those parties on the attached list that are registered users of the Court's Electronic Case Filing System.

14

☒ **(FEDERAL)** I declare under penalty of perjury under the laws of the United States of America that the above is true and correct and that I took said action(s) at the direction of a licensed attorney authorized to practice before the Federal Courts.

15

16

17

18

Executed on May 10, 2022, at Los Angeles, California.

19

20

/s/ A.J. Vasquez
A.J. Vasquez

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

**ATTACHED SERVICE LIST**
*Hayden Gragnano v. TGI Friday's, Inc.*

Matthew J. Matern, Esq.                    *Attorneys for Plaintiff*
Launa Adolph, Esq.
Kayvon Sabourian, Esq.                         Hayden Gragnano
**MATERN LAW GROUP, PC**
1230 Rosecrans Avenue, Suite 200
Manhattan Beach, CA 90266
Tel: (310) 531-1900
Fax: (310) 531-1901
Email: KSabourian@maternlawgroup.com
        LAdolph@maternlawgroup.com

**PROOF OF SERVICE**